# DECISIONS

IN THE

# SUPREME COURT OF THE UNITED STATES,

## DECEMBER TERM, 1871.

---

### UNITED STATES v. CRUSELL.

A judgment of the Court of Claims giving a loyal owner the proceeds of cotton seized under the Abandoned and Captured Property Act, affirmed; the case tending generally, though not in the most specific manner, to show that the cotton had been sold and its proceeds paid into the treasury; and an opposite conclusion being irreconcilable with the presumption that the military and fiscal officers of the United States had done their official duty.

APPEAL from the Court of Claims; the case being thus:

The "Abandoned and Captured Property Act"* authorized the Secretary of the Treasury to appoint special agents to receive and collect all abandoned or captured property in any State or Territory in insurrection against the United States, and authorized also the sending of such property to any place of sale within the loyal States, and the sale of it at auction to the highest bidder. "*And the proceeds thereof,*" says the act, "shall *be paid into the Treasury of the United States.*" "The treasurer," adds the act, "*shall cause a book of accounts to be kept showing from whom such property was received,* and the cost of transportation, *and proceeds of the sale thereof.*"

The fourth section enacts:

"That all property coming into any of the United States not

---

declared in insurrection as aforesaid, from within any of the States declared in insurrection, through or by any other person than an agent duly appointed under the provisions of this act, or under a lawful clearance by the proper officer of the Treasury Department, shall be confiscated to the use of the government of the United States. And any agent or agents, person or persons, by or through whom such property shall come within the lines of the United States unlawfully as aforesaid, shall be guilty of a misdemeanor, and on conviction thereof, shall be fined in any sum not exceeding $1000, or imprisoned for any time not exceeding one year, or both, at the discretion of the court."

The sixth section is as follows:

" It shall be the *duty* of every officer or private of the regular or volunteer forces of the United States, or any officer, sailor, or marine in the naval service of the United States upon the inland waters of the United States, who may take or receive any such abandoned property, from persons in such insurrectionary districts, or have it under his control, to turn the same over to an agent appointed as aforesaid, who shall give a receipt therefor; *and in case he shall refuse or neglect so to do, he shall be tried by a court-martial, and shall be dismissed from the service, or, if an officer, reduced to the ranks, or suffer such other punishment as said court shall order with the approval of the President of the United States."*

The act also provides that any person asserting himself to have been owner of any such abandoned property "may prefer his claim to the proceeds thereof in the Court of Claims, and on proof to the satisfaction of said court of his ownership of said property, of his right to the proceeds thereof, and that he has never given any aid or comfort to the present rebellion, shall receive the residue of such proceeds, after the deduction of any purchase-money which may have been paid, together with the expense of transportation and sale of said property, and any other lawful expenses attending the disposition thereof."

Under this act one Crusell, a loyal citizen of Georgia, presented his petition to the Court of Claims, claiming the net proceeds of 73 bales (about 37,500 lbs.) of cotton which he

alleged belonged to him, and had been stored at Atlanta, Georgia, where, on the capture of the place by General Sherman, in September, 1864, it had been seized by the United States, turned over to an agent of the Treasury Department, sold by him, and the net proceeds paid into the Treasury. Owing to the fact, as was testified, that the quartermaster in charge of captured and abandoned property had left Atlanta before the claimant's cotton had been delivered at the depot there, the claimant had not procured a receipt.

The findings of the court showed that a large amount of cotton had been sold and the proceeds thereof paid into the treasury. The question in the case was whether these 73 bales were in fact so included.

They were in the possession of the quartermaster in charge of abandoned and captured property at Atlanta, in October, 1864. This quartermaster in that month shipped to the officer in charge of military railroad transportation, at Nashville, 130,605 pounds of cotton; but whether the cotton of the claimant was included in the shipment was not shown. It seemed, however, that the officer in charge turned over to the treasury agent at Nashville 1382 bales and a large quantity of loose cotton, coming from Atlanta, Chattanooga, and points beyond Chattanooga, in Georgia. The cotton received by this agent was forwarded to the supervising agent at Cincinnati, and sold by him, and the proceeds paid into the treasury.

It was shown that in the month of December, 1864, there was a sale of cotton at Cincinnati, and sundry bales of cotton marked with the claimant's mark were sold. Whether the person conducting the sale was the supervising agent of the Treasury Department did not appear.

The Court of Claims found on this case that the 73 bales of the petitioner had been sold and the proceeds paid into the treasury, and the identity of the several lots of cotton coming from Atlanta having been lost, the court gave the claimant judgment for a *pro rata* amount of the proceeds of all the cotton seized at that place.

From this decree the United States appealed.

*Mr. B. H. Bristow, Solicitor-General, and Mr. C. H. Hill, Assistant Attorney-General, for the appellants,* contended that the 73 bales were not sufficiently traced, and that there was no sufficient identification of them; nor any sufficient evidence that the money had been paid into the treasury, and that whether or not the Court of Claims had done wrong to give à *pro tanto* judgment.

*Messrs. Hughes, Denvers, and Peck, contra:*

One of two conclusions is inevitable, either that the army and other officers did their duty, or that they committed an offence for which they were liable to be degraded and otherwise punished. The first presumption is a natural one; the last, not one to be made in the face of statutes denouncing fines, penalties, confiscation, imprisonment, degradation, and dismissals from service against every officer or person who should attempt to move this property, except in the authorized manner. The government asks the court to believe that the cotton did not take the only course which under the circumstances it was possible for it to take.

If the cotton was unidentified, the reason was that the quartermaster was absent from Atlanta when it was delivered at the depot, and when it was shipped; and therefore it went forward unidentified on the books of the treasury agent, as did other bales. The *pro rata* judgment was a right one, in view of the case.

The CHIEF JUSTICE delivered the opinion of the court.

Presuming that the officers of the government performed their duty, there can be no doubt that the quartermaster at Atlanta forwarded to the officer in charge of military railroad transportation the cotton of the claimant; and that this officer turned over the cotton to the agent at Nashville, by whom it was forwarded to Cincinnati and sold by the supervising agent there. The presumption in this case is strengthened by the fact that heavy statutory penalties would be incurred by neglect of duty. There is nothing in the case to repel this presumption. If any evidence to this effect exists,

it must be contained in the books of the Treasury Department, and these are under the control of the defendant.

We think, therefore, that the conclusion of the Court of Claims, that the proceeds of the 73 bales of cotton belonging to the claimant were paid into the treasury, and that the claimant was entitled to judgment, was right.

JUDGMENT AFFIRMED.

Mr. Justice DAVIS, with whom concurred Mr. Justice SWAYNE and Mr. Justice MILLER, dissenting.

In my opinion, the burden of proof in this case is on the claimant to show that the money which he seeks to obtain under the Captured and Abandoned Property Act has been paid into the treasury. The court, in its opinion, throws the burden of proof, on this point, on the United States, and on that account I am constrained to dissent from the judgment in the case.